**David ATKINSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 5796.**

District of Columbia Court of Appeals.

Argued May 8, 1972.

Decided Oct. 13, 1972.

James W. Respess, Washington, D. C., appointed by this court, for appellant.

Joseph F. McSorley, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and Charles E. Brookhart, Asst. U. S. Attys., were on the brief, for appellee.

Before KERN and GALLAGHER, Associate Judges, and HOOD, Chief Judge, Retired.

HOOD, Chief Judge, Retired:

Appellant was arrested on November 25, 1970 and charged with carrying a pistol without a license.[1] The arrest was made by two Metropolitan Police officers responding to a radio lookout in connection with the robbery of a carryout which occurred some three blocks from where appellant was arrested and 26 minutes prior to the arrest.[2] When appellant was approached by the police officers, he was wearing a three-quarter length trench coat, had a scar on his neck and was carrying a paper bag rolled up under his arm. The police officers stopped appellant, informed him of the robbery and of the fact that he appeared to match the description of the robber. When the officers inquired as to the contents of the bag, appellant responded that it contained "baby clothes". One of the officers, thinking that such a bag could contain the proceeds of the robbery, reached out and felt the bag and found that it contained a hard object. A closer inspection revealed that the bag contained two fully loaded pistols.

Appellant's case was presented to the grand jury of the United States District Court on December 16, 1970. The grand jury returned an indictment to the Superior Court of the District of Columbia on February 1, 1971, charging appellant with two counts of carrying a pistol without a

---

1. D.C.Code 1967, § 22–3204.

2. The lookout was broadcast for a Negro male, age 32–34, with a heavy build and a scar on his neck, wearing a three-quarter length tan trench coat and eyeglasses with red lenses.

license. Appellant was tried on that indictment, convicted and sentenced to 1 to 3 years to be served concurrently with the remainder of a previous sentence from which he was on parole at the time of his arrest.

■ Appellant attacks his conviction on two grounds and his sentence on one. As to the conviction, appellant first attacks the validity of the indictment. He argues that the return of an indictment by a grand jury of the United States District Court to the Superior Court of the District of Columbia was a violation of his fifth amendment rights and a "substantive distortion of the purpose and function of that jury."

In answer to a similar claim, Judge Daly of the Superior Court, in an opinion in United States v. Jackson, Super.Ct.D.C. (Crim. No. 11050–71, decided June 15, 1971; reported in part in 99 D.W.L.R. 1177) clearly defined the problem with which we are confronted in this case and reached a well-reasoned conclusion which we adopt. In *Jackson, supra* at 3, the court states:

> The Fifth Amendment requires that "infamous crimes" (felonies) be charged by indictment returned by a Grand Jury. An indictment has two major purposes: (1) to apprise the accused of the charge against him, in order that he may adequately prepare a defense; and (2) to describe the crime or crimes with sufficient specificity to enable him to protect himself against future jeopardy for the same offense. The rules of both District Court and Superior Court satisfy these Fifth Amendment requirements. It is noted that these rules are identical and require that the indictment must be found by at least twelve Grand Jurors and must contain a plain, concise and definite written statement of those essential facts which constitute the offense charged. Under these rules, no distinc-

tion can be drawn between an indictment returned by a Grand Jury sworn in at the United States District Court on December 7, 1970, and one convened by the Chief Judge of the Superior Court on February 1, 1971. At the time that this indictment was returned, two Grand Jury panels had been convened in the District of Columbia, both authorized to return indictments to either court. *On February 1, 1971, the United States District Court no longer had jurisdiction over this case because of the type of felony involved.*

> Defendant was not in any way prejudiced by the manner in which this indictment was returned. He was chargeable under the same statute, requiring the same degree of proof and there is no question about the preservation of the historical safeguards against a hasty or an oppressive prosecution. Indictments returned by either Grand Jury require identical content and identical numbers of concurring jurors who are selected in the same manner and upon the same qualifications. Everything is identical between both Grand Juries; purpose, standards, functions, powers, qualifications, and rules. The only possible difference is the physical identity of the jurors themselves. Therefore, a lawfully convened Grand Jury, with the statutory authority to do so, has fully deliberated the subject matter of this case and returned a valid indictment in Superior Court as the only forum having jurisdiction over the offense herein charged. (Footnotes omitted).

Beginning February 1, 1971, when the indictment was returned, the United States District Court for the District of Columbia no longer had jurisdiction over the offense with which appellant was charged.[3] Jurisdiction over that offense was granted to the Superior Court by the District of Columbia Court Reform and Criminal Procedure Act.[4] Furthermore, on February 1,

---

3. D.C.Code 1967, § 11–502 (Supp. V, 1972).

4. *Id.* § 11–923 (Supp. V, 1972).

1971, the United States District Court grand jury was expressly authorized by statute to return indictments to the Superior Court.[5] We hold that appellant was charged and convicted under a valid indictment.

In his second attack on his conviction, appellant challenges the legality of his arrest, saying there was no probable cause for the arrest. We disagree.

The proximity of appellant in distance and time from the occurrence of the robbery, coupled with the fact he reasonably matched the description given in the lookout, gave the officers probable cause to make an arrest. It is true that appellant did not meet the descripton in all respects; but the discrepancies in age and size, in our opinion, were overcome by the identifying scar on the neck. While observers may often differ in their estimate of age, weight and height, they are far less likely to differ as to a specific mark of identification such as a scar on the neck. As the trial court observed, "the scar on the neck, clearly visible" was "such a unique element of identification" as to dissipate any doubts caused by discrepancies in the general description. *Cf.* Brown v. United States, 125 U.S.App.D.C. 43, 365 F.2d 976 (1966).

Some argument is made as to the exact time the arrest occurred. The arresting officer testified: "I don't think that I placed him under arrest until I saw the guns. That is when I placed him under arrest." If, as we so hold, the officer had probable cause to arrest when he first stopped appellant, it is immaterial whether the search preceded or followed the arrest. Probable cause to arrest for a crime of this nature gave reasonable cause to search. As Justice Harlan, concurring in Sibron v. New York, 392

U.S. 40, 77, 88 S.Ct. 1889, 1909, 20 L.Ed. 2d 917 (1968), said:

. . . Of course, the fruits of a search may not be used to justify an arrest to which it is incident, but this means only that probable cause to arrest must precede the search. If the prosecution shows probable cause to arrest prior to a search of a man's person, it has met its total burden. There is *no* case in which a defendant may validly say, "Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards."

Appellant next attacks his sentence, alleging that the trial court erred in failing to sentence him under the provisions of the Young Adult Offenders Act.[6] That provision of the U.S.Code provides for treatment of young adult offenders between the ages of 22 and 26 under the provisions of the Federal Youth Corrections Act[7] if, in the discretion of the court, they meet the specific requirements set out in the Young Adult Offenders Act.

Congress, in Section 6 of Public Law No. 85–752 as amended, has provided that "this Act [Young Adult Offenders Act] . . . shall apply in the States of the United States, and in the District of Columbia so far as they relate to persons charged with or convicted of offenses under any law of the United States *not applicable exclusively to the District of Columbia.*" (Emphasis supplied.) Appellant was convicted under a law applicable exclusively to the District of Columbia and therefore was not eligible for sentencing under the Young Adult Offenders Act.

Affirmed.

---

5. *Id.* § 11–1903 (Supp. V, 1972).

6. 18 U.S.C. § 4209 (1970).

7. 18 U.S.C. §§ 5005–5026 (1970).