Reginald B. BROOKS, a/k/a
Carl Hill, Appellant,

v.

UNITED STATES, Appellee.

No. 84–77.

District of Columbia Court of Appeals.

Argued April 16, 1991.

Decided Nov. 15, 1991.

W. Gary Kohlman, Washington, D.C., for appellant.

John G. Horan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Thomas C. Black, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, and SCHWELB and WAGNER, Associate Judges.

SCHWELB, Associate Judge:

On October 26, 1983, Reginald Brooks was convicted by a jury of one count each of burglary in the second degree, D.C.Code § 22–1801(b) (1981), malicious destruction of property, *id.* § 22–403, breaking and entering a vending machine, *id* § 22–3427, and petit larceny, *id.* § 22–2202. On appeal he contends, among other things,[1] that the trial judge committed reversible error by instructing the jury, after it had commenced its deliberations, with respect to the law of aiding and abetting. Brooks claims that the case was tried on the theory that he was the principal and that there was no evidentiary basis for the notion that he aided and abetted another principal in the commission of the crime. We agree with Brooks' contention, and therefore reverse his conviction.

I

THE EVIDENCE

This case arises out of an incident which occurred more than nine years ago. On Sunday, February 21, 1982, according to the prosecution witnesses, someone broke into the Lincoln House Restaurant, which is located near Ford's Theatre at 10th and E Streets in Northwest Washington, D.C. The rear door of the establishment was taken off its hinges. The intruder attempted to tamper with the office door and the safe and broke into the cigarette machine. Several liquor bottles were removed from a storage area behind the bar and placed in a bag in the center of the floor; other bottles

were found standing on the bar. There was no dispute at trial that a burglary and related offenses had been committed by someone. It was the prosecution's theory that the someone was Reginald Brooks.

The government introduced a substantial amount of evidence to prove its case; we describe only that portion of it which is relevant to the issues at hand. Briefly, the restaurant was closed on the day of the crime. The owner came to the premises and heard banging noises emanating from the direction of the back door in the basement. After a brief attempt to investigate, he called the police and waited for officers in the front of the restaurant.

Officers Tyrie Wharton and Allan Waters were the first to arrive. Officer Wharton went to the front of the building, while Officer Waters covered the back. The owner remained with Officer Wharton, and both looked into the restaurant through a window near the front door. They noted that the cigarette machine had been moved several feet from its normal location, and they then spotted a man crouched down near the contraption, apparently trying to pull it. Officer Wharton noticed that the man was wearing a plaid sweater which, as she recalled, contained the colors red, rust and brown.

In the meantime, when Officer Waters arrived at the rear of the establishment, he saw a woman, later identified as Cynthia Murphy, standing in an alley near the open front of a garage adjoining the restaurant. In the garage, a few feet from Ms. Murphy, the officer found a woman's pocketbook which contained an assortment of tools.[2] Officer Wharton estimated that the

1. Brooks' other principal contention is that the trial judge should have conducted an inquiry pursuant to *Monroe v. United States*, 389 A.2d 811 (D.C.), *cert. denied*, 439 U.S. 1006, 99 S.Ct. 621, 58 L.Ed.2d 683 (1978), and *Farrell v. United States*, 391 A.2d 755 (D.C.1978) when Brooks, following jury selection, expressed dissatisfaction with his assigned attorney. Brooks was permitted to represent himself, *see Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), but now contends that the judge did not adequately explain to him his right to be represented by competent counsel different from the lawyer with whom he was not satisfied. The government maintains that

the *Faretta* inquiry was sufficient and that assuming, *arguendo*, that *Monroe* and *Farrell* apply, there was substantial compliance with the requirements of these decisions.

Counsel have presented us with thoughtful and interesting arguments regarding the interplay between *Faretta* and *Monroe– Farrell.* In light of our disposition, however, we need not reach these issues or others presented by Brooks in a submission to the court separate from that presented by his appellate counsel.

2. Testimony was eventually presented to the effect that the tools in the pocketbook could have been used in order to force entry into the restaurant.

opening of the garage was eight to ten feet from the rear door of the restaurant.

Officer Wharton called for the assistance of a canine unit, and Officer Donald L. Beach and his German shepherd police dog soon arrived on the scene. After announcing his presence and receiving no response, Officer Beach released the dog. The canine sleuth ran to the bag containing the liquor bottles, then down a stairway to the lounge in the basement, and finally towards the rear door. Hearing the noise from inside the establishment, Officer Waters positioned himself behind a wall in the alley so that he could see the basement doorway. According to Officer Waters, a man ran out of the open doorway. Officer Waters grabbed the man, who turned out to be Reginald Brooks.

Officer Wharton eventually testified that the sweater which Brooks was wearing looked like[3] the sweater which she had observed on the intruder when he was at the cigarette machine.[4] The owner thought that Brooks was the man whom he had seen inside the restaurant, but was not sure enough to make a positive identification.

Brooks did not testify on his own behalf. His only witness was a Public Defender Service investigator who had examined the premises and prepared photographs and a diagram. The investigator testified, among other things, that the door to the basement of the restaurant is not visible from within the garage, and that a person standing in the front opening of the garage could not see someone running out of the basement doorway.

Brooks and Ms. Murphy were both arrested and charged as codefendants in the same indictment. The record before us does not disclose the disposition of the case against Ms. Murphy. In any event, Brooks was tried alone.

---

**3.** On cross-examination, Officer Wharton went further: "The plaid sweater that the guy had on in the restaurant was the sweater the person had on that we locked up."

**4.** Both Officer Wharton and Officer Waters were impeached in some measure with apparent inconsistencies between portions of their testimony and the police forms which they had completed at the time of the arrest.

## II

## THE CONTROVERSY OVER THE AIDING AND ABETTING INSTRUCTION

The prosecution case was presented in its entirety on the theory that Brooks was the principal, rather than an aider or abettor. The prosecutor began his opening statement by telling the jury that

You will hear in this case evidence of how the man who sits before you today, Reginald Brooks, was caught in the act of burglarizing the Lincoln House Restaurant.

The government's theory remained the same during closing argument:

The most important evidence is to consider what happened once Mr. Brooks got inside. What did he do? He went in and tried to steal the liquor bottles. He went in and he broke open this cigarette machine, left cigarettes and money all over the place. How do we know he had an intent to steal when he went in? That's what he did when he went in.

The government's focus never changed during the presentation of the case. With the express consent of both counsel, the trial judge decided to instruct the jury before closing argument.[5] He did so because

it is easier for you to make your arguments based on the instructions that the jury has already heard. It is much easier for the jury, having heard the instructions, then to follow your argument.

The judge thus correctly viewed it as especially important that both Brooks and the prosecutor be apprised of the content of the instructions before making their arguments. His determination that the instructions should be given first was plainly designed to assure that this be effectively accomplished. Indeed, the purpose of Su-

---

**5.** Several years after the trial in this case, this court criticized this practice in *Kling v. Peters*, 564 A.2d 708, 719–20 (D.C.1989). *Kling* was a civil case, but its reasoning applies with equal force to civil and criminal proceedings. Super.Ct.Crim.R. 30 was recently amended, however, to provide that "[t]he Court may instruct the jury before or after the arguments are completed or at both times."

per.Ct.Crim.R. 30 is to "provide counsel with the opportunity to fashion their closing arguments according to the charges to be submitted to the jury." *Ballard v. United States*, 430 A.2d 483, 487 (D.C.1981).

During the discussion of proposed jury instructions, the prosecutor requested the judge to include in his charge standardized jury instruction No. 4.02, which deals with aiding and abetting.[6] CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA No. 4.02 (3d ed. 1978). Brooks questioned whether there was any basis in the record for giving this instruction. In response to an inquiry by the judge, the prosecutor confirmed that, to use the judge's words, "the theory would be that the jury could find Mr. Brooks guilty as having aided and abetted Ms. Murphy in these offenses." The prosecutor pointed out that Ms. Murphy was found near the tools with which the rear door might have been dislodged, and argued as a "fair inference from the evidence" that Ms. Murphy "either herself broke open the door or helped somebody else break open the door or was perhaps holding the tools for the person that did break open the door."

The judge responded that he could see how the evidence relating to Ms. Murphy might support an aiding and abetting instruction in her case if *she* were on trial; it was possible, in other words, that Ms. Murphy was aiding and abetting Brooks. Citing *Payton v. United States*, 305 A.2d 512, 513 (D.C.1973) (per curiam), however, he concluded that the evidence that there was a principal whom Brooks could have aided and abetted was vague and inconclusive. Relying on *Payton*, the judge declined to give the requested instruction, thus putting the parties on notice that the closing arguments would have to be fashioned on the premise that Brooks was accused of being the principal, rather than of assisting someone else to burglarize the property.

During closing argument, the prosecutor again focused on the government's evidence that Brooks was a burglar who had been caught in the act. In response, Brooks, who had not testified and therefore could not be cross-examined, represented to the jury that he was never in the restaurant,[7] and suggested that there could have been a "missing link suspect" who might have seen the owner, left the establishment through the back door, and escaped through the alley. In his rebuttal argument, the prosecutor responded, quite correctly, that there was "no evidence from the witness stand that there was yet a third person involved here in this burglary, apart from Mr. Brooks, who came running out, and apart from Ms. Murphy standing

---

6. Instruction 4.02 reads in pertinent part as follows:

> You may find the defendant guilty of the crime charged in the indictment without finding that he personally committed each of the acts constituting the offense or that he was personally present at the commission of the offense. Any person who [advises, incites, or connives at] [counsels, commands, induces, or procures] an offense aids or abets the principal offender and is therefore punishable as a principal. That is, he is as guilty of the offense as if he had personally committed each of the acts constituting the offense.

> A person aids and abets another in the commission of a crime if he knowingly associates himself in some way with the criminal venture with the intent to commit the crime, participates in it as something he wishes to bring about, and seeks by some action of his to make it succeed.

7. Brooks' closing argument included the following:

> ... I had to plead the truth that I understand, I knew that certain things hadn't happened. I knew that I had not been in the building.
>
> \* \* \* \* \* \*
>
> I also don't want you to think that I'm clever, that I'm a con artist or anything. I rely on God. I asked last night for the gift of understanding. I asked God to bless you all with the gift of understanding. So that when I say what I have to say in reference to the truth, that it will make sense to you as the truth as it comes from my mouth as the truth.
>
> \* \* \* \* \* \*
>
> That is why I asked—why I said I found it necessary to plead and to try to extract the truth, because I know that I wasn't in there. So I know that there was no way [Officer Wharton] could state in an official police document as a fact that she had observed me running out of the door and running into the arms of Officer Waters.

There was no basis in the evidence for any of these assertions.

in the back alley with the burglar tools in her pocketbook."

That was where matters stood in relation to the dispute over an "aiding and abetting" instruction until the court heard, several days later, from another vital participant in the proceedings, namely the jury. Jury deliberations had begun on Friday, October 21, 1983. At 4:50 p.m. on Tuesday, October 25, the jury sent the judge a note which read as follows:

> If a person knows of a crime and is present during the crime and agrees with the commission of the crime, is that person guilty of a crime? Please clarify the law on these questions, particularly in reference to petit larceny.

The prosecutor immediately suggested that the judge respond to the request by now giving the jury instruction which the judge had previously rejected, namely, No. 4.02. The prosecutor argued that "the jury may have credited—that the jury may be wrestling with the suggestion that there was yet a third person involved in the burglary who escaped arrest." He pointed out that Brooks

> had argued something to the jury, or at least implied as much to the jury, that another person might have escaped from the restaurant and had hidden himself in the alleyway, or just run away, simply run away from the officers who were coming north from the alleyway, by himself running north through the alleyway.

Brooks objected to the instruction, contending that the prosecutor had relied on the theory that he was the principal rather than an aider and abettor of another person. The judge, however, now decided to give the aiding and abetting instruction, explaining his rationale as follows:

> Well, I think that I have to distinguish the government's theory in this case from the testimony of the witnesses that the government has presented. The government's witnesses, in response to questions from you, Mr. Brooks, gave testimony concerning the possibility of a person other than you having hid in that area or made his way out through some other means.
>
> While I think that is pretty thin, that is certainly what you relied on in your ar-

gument to the jury. I think that that theory of the case, even though the jury may doubt it, that theory is before them.

> So, I am going to reverse the decision that I made earlier in denying this instruction. I am going to go ahead and give it to the jury now in response to their question.

The judge then directed that jurors be returned to the courtroom, and read them Instruction No. 4.02 on aiding and abetting. At approximately 11:00 a.m. on the following morning, after less than two hours of additional deliberation, the jury announced that it had reached a verdict, which turned out to be unfavorable to Brooks on all counts.

## III

## LEGAL DISCUSSION

### A. The lack of evidentiary basis for the aiding and abetting instruction.

When the prosecutor initially requested an "aiding and abetting" instruction, the judge commented that in light of the evidence that Brooks was inside the restaurant, while Ms. Murphy was outside it near the tools that could have been used to accomplish the break-in, there would have been an evidentiary basis for regarding Ms. Murphy, but not Brooks, as an aider or abettor. We think that this was a correct assessment of the evidence insofar as it concerned the respective roles of the two individuals. We agree with Brooks that there was no evidentiary basis for an instruction predicated on the notion that Brooks was an aider and abettor and someone else the principal. As Brooks points out in his reply brief, "nothing in the record really indicates that Ms. Murphy was the principal brain or brawn of the attempt to burglarize the Lincoln [House] Restaurant." Moreover, there is no basis in the record for the notion that Brooks was aiding or abetting an unknown third party.

The common law was burdened with obscure and technical distinctions between principals and accessories, and these refinements had the potential for derailing prose-

cutions for reasons unrelated to the merits. "If the defendant were charged as a principal he could not be convicted upon proof that he was an accessory. Likewise, one charged only as an accessory could not be convicted if the evidence established that he was instead a principal." 2 WAYNE R. LAFAVE & AUSTIN W. SCOTT, JR., SUBSTANTIVE CRIMINAL LAW, § 6.6, at 131 (1986). A great deal could depend on the skill and artistry of the pleader.

The statutory law of this jurisdiction, however, provides in pertinent part that "all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories." D.C.Code § 22–105 (1989). Section 22–105 "extended [the] doctrine of vicarious responsibility to additional classes of offenders by treating them as principals." *Hazel v. United States,* 353 A.2d 280, 283 n. 9 (D.C.1976); *see Maxey v. United States,* 30 App.D.C. 63, 72–73 (1907). Doctrinal distinctions have been supplanted by a more down-to-earth and practical approach.

■ Under § 22–105 and its federal counterpart, 18 U.S.C. § 2(a),

> [c]riminal accountability does not depend inexorably upon personal performance of the acts comprising an offense. He who assists the perpetrator of crime in its commission is as much answerable as if he had engaged in all of its essential aspects himself.

*United States v. Staten,* 189 U.S.App.D.C. 100, 108, 581 F.2d 878, 886 (1978) (footnote omitted). The classic articulation of the aiding and abetting doctrine, written by Judge Learned Hand and subsequently adopted by the Supreme Court[8] and by our own,[9] teaches that in order to aid or abet another to commit a crime, it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938).

■ But "[w]hile a defendant may be charged and convicted as the principal even though the proof is that he was only an aider and abettor...., *there must be evidence that someone other than defendant was the principal whom the defendant aided and abetted.*" *Payton, supra,* 305 A.2d at 513 (citations omitted) (emphasis added); *see also Gayden v. United States,* 584 A.2d 578, 582 (D.C.1990), *cert. denied,* — U.S. ——, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991) (quoting *Payton*); *Head v. United States,* 451 A.2d 615, 626 (D.C.1982) (reversal may be required where an aiding and abetting instruction has been given if the evidence of the existence of a principal is vague). To be an aider and abettor, one must "aid or abet or procure *someone else* to commit a substantive offense.... *One cannot aid or abet himself.*" *United States v. Martin,* 747 F.2d 1404, 1407 (11th Cir.1985) (emphasis added). It is not essential that the principal in the operation be identified, but the prosecution is still required to establish that someone has that status. *Gayden, supra,* 584 A.2d at 582; *Staten, supra,* 189 U.S.App. D.C. at 109, 581 F.2d at 887.

■ Any impartial assessment of the record in this case compels the conclusion that the purported evidence that there was a principal in the burglary whom Brooks was assisting is not merely vague, *cf. Head, supra,* 451 A.2d at 626, but for all practical purposes non-existent. To conclude that Brooks was an aider or abettor, "the jury would have to engage in an irrational or bizarre reconstruction of the facts of the case." *Anderson v. United States,* 490 A.2d 1127, 1130 (D.C.1985) (per curiam); *see also Wood v. United States,* 472 A.2d 408, 410 (D.C.1984).

As the judge correctly observed when first confronted with the issue under discussion, there was evidence from which one could reasonably infer that Ms. Murphy—the person outside the establishment near the tools—might have aided and abetted Brooks, who was allegedly seen inside the

---

**8.** *See Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 770, 93 L.Ed. 919 (1949).

**9.** *See Hackney v. United States,* 389 A.2d 1336, 1342 (D.C.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 95 (1979).

restaurant and apprehended after fleeing from it to avoid apprehension. That the man who burglarized the premises may have had an accomplice, however, does not convert him into the aider or abettor; rather, it tends to identify him as the principal who was aided or abetted by another.[10] Even if the trial judge had found Ms. Murphy to be the potential principal—and the judge did not[11]—we could find no substantial basis in the record for sustaining such a ruling.

 Nor is the aiding and abetting instruction supported by any questions Brooks asked of prosecution witnesses or by anything he said in closing argument. No prosecution witness saw or heard or knew of a "missing link" suspect or of any intruder other than Brooks himself. The judge instructed the jurors that "you may consider only the evidence properly admitted in the case," including the "sworn testimony of the witnesses." He also explained that "the statements and the arguments of counsel, including in this case, Mr. Brooks', are not evidence." Jurors are presumed to follow instructions, *Coates v. United States*, 558 A.2d 1148, 1150 (D.C.1989), and Brooks' suggestion that there might have been a third party who burglarized the restaurant could not by some form of forensic alchemy convert non-evidence into evidence.

But even if Brooks' statements as *pro se* counsel could be deemed in some way to have expanded the record[12]—and we do not think they can—there still would be no evidentiary support for the notion that Brooks may have been an aider or abettor. The "missing link suspect" hypothesis must be predicated entirely on the assumption that the man who was seen in the restaurant was not Brooks but somebody else. But if that hypothesis is correct and the "missing link" suspect was the one who broke in, then there is no evidence whatever that Brooks aided and abetted him. The *only* evidence against Brooks is that he was identified as the burglar inside the restaurant and apprehended as he left it. If he was not the man inside, then there was simply no evidence of wrongdoing on his part. In other words, Brooks was either the principal or a non-participant. There is no evidentiary predicate for finding that he was an aider or abettor.

### B. The timing of the instruction.

The lack of evidence to support the aiding and abetting instruction, which was alone sufficient to require reversal, was compounded by the timing of the judge's decision to give it. The closing arguments had been completed several days earlier. If the instruction had been given in advance of the closing arguments, in conformity with the judge's laudable aims de-

---

**10.** Section 22–105 provides in pertinent part that "all persons advising, inciting or conniving at the offense, or aiding or abetting *the principal offender,* shall be charged as principals and not as accessories...." (Emphasis added). Under no reasonable view of the evidence could Ms. Murphy, or any unidentified individual, be viewed as "the principal offender." None of the authorities cited by our dissenting colleague stands for the proposition that the main wrongdoer can be the aider or abettor of a minor participant in the unlawful conduct.

**11.** In reversing his earlier ruling after receiving the jury's note, the judge did not mention Ms. Murphy again. Although the reasons for his ruling, set out at page 1098, *supra,* are not entirely clear, they appear to have been based on the hypothetical existence of a mystery burglar (the "missing link suspect") suggested by Brooks in his closing argument.

**12.** Generally speaking, the doctrine that statements of counsel are not evidence is designed to

prevent a statement of an attorney from adding facts favorable to the attorney's client to the record where the statement has no evidentiary basis. That principle is not directly implicated here. Rather, it is Brooks' adversary—the prosecution—which is seeking to use Brooks' statements in closing argument to provide the basis for an instruction favorable to the government.

"[N]o man may take advantage of his own wrong," *Glus v. Brooklyn Eastern Dist. Terminal,* 359 U.S. 231, 232, 79 S.Ct. 760, 762, 3 L.Ed.2d 770 (1959), and it is arguably inequitable for Brooks, after having improperly told the jury during closing argument about alleged facts not supported by sworn testimony, to be permitted to deny that those alleged facts are in the record for the purpose of determining what instructions are appropriate. We note, however, that the prosecutor did not object to most of the unorthodox narrative in Brooks' argument; he did make a few objections, which were sustained.

scribed at pages 1096–1097, *supra*, then Brooks would have had the opportunity to invite the jury's attention to the lack of evidence of any connection between Ms. Murphy and himself. There was no testimony that the two of them were even acquainted with one another. Brooks could also have pointed out to the jury, as we have noted in this opinion, that if the man in the restaurant was in fact someone other than Brooks, then there was nothing in the record to indicate that Brooks had given that man any assistance whatever.

The present case differs in this respect from *Tyler v. United States*, 495 A.2d 1180, 1183 (D.C.1985), on which the government places heavy reliance. In *Tyler*, this court sustained a trial court finding that the defendant's closing argument would not have been different even if the aiding and abetting instruction had been made expressly applicable to the burglary charge [13] before the jury began its deliberations, rather than as a reinstruction in response to a jury note. Here, for the reasons stated, the closing arguments might well have been substantially different if the judge had advised the parties in advance that he would instruct the jury on aiding and abetting.

The government points out that Brooks, like the defendant in *Tyler*, did not specifically request the opportunity to make further jury argument. *See Tyler, supra*, 495 A.2d at 1183. This observation is correct, although we note that the proceedings after the judge had decided to give the belated instruction were quite abbreviated,[14] and it might have been difficult even for an experienced attorney, in reacting to these unusual denouements, to remember "on

the spot" to request an opportunity to argue further. In any event, we do not predicate our decision on the judge's failure to permit the parties to reopen their closing arguments (which he was not asked to do), but simply note that the prejudicial effect of the instructional error might have been alleviated by further jury argument on the issue of aiding and abetting.[15]

### C. Harmless error analysis.

■ By giving the aiding and abetting instruction in this case, the judge communicated to the jurors that, even if they did not credit the prosecution testimony that Brooks was the man inside the restaurant, they could nevertheless find him guilty as charged. Instruction No. 4.02, as we have noted, begins with the admonition that

[y]ou may find the defendant guilty of the crime[s] charged in the indictment without finding that he personally committed each of the acts constituting the offense[s] *or that he was personally present at the commission of the offense[s].*

(Emphasis added). In the context of the present record, this meant that Brooks could be convicted even if the jury believed that he did not enter the premises, that someone else did, and that his presence in the area assisted the unknown principal in some other unspecified way. Since there was no evidence that Brooks did anything unlawful other than breaking into the restaurant in order to burglarize it, and since that evidence would make him a principal rather than an aider or abettor, we cannot conclude that the error was harmless.

It is well settled that instructional error is subject to harmless error analysis. *Ty-*

**13.** In *Tyler*, the trial judge had previously instructed the jury with respect to aiding and abetting with regard to certain other counts in the indictment.

**14.** THE DEFENDANT BROOKS: May I say something, Your Honor?
THE COURT: I thought that you already did, Mr. Brooks. But I would be glad to hear you again.
THE DEFENDANT BROOKS: Well, I didn't—didn't rely on the third party.
THE COURT: Well, I have to go by my recollection of what your argument to the jury was.

THE DEFENDANT BROOKS: Well—
THE COURT: [Interposing] I have ruled now, Mr. Brooks.
THE DEFENDANT BROOKS: May the defense now make a move for a mistrial?
THE COURT: Motion denied. Let's bring the jury in, please.

**15.** Brooks also relies on *Scutchings v. United States*, 509 A.2d 634 (D.C.1986) for the proposition that, on these facts, the indictment was constructively amended by the instruction that he could be convicted as an aider and abettor. In light of our disposition, we need not address this contention.

ler, supra, 495 A.2d at 1183; see also Arizona v. Fulminante, — U.S. —, —, 111 S.Ct. 1246, 1263, 113 L.Ed.2d 302 (1991); Clemons v. Mississippi, 494 U.S. 738, —, 110 S.Ct. 1441, 1450–51, 108 L.Ed.2d 725 (1990); Pope v. Illinois, 481 U.S. 497, 501–04, 107 S.Ct. 1918, 1921–23, 95 L.Ed.2d 439 (1987). To conclude that the error in this case was harmless, however, we must be satisfied "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946) (emphasis added); Jones v. United States, 555 A.2d 1024, 1028 (D.C.1989).[16] We must focus on "whether the untainted proof is so overwhelming that it fairly may be said that the same verdict would have been reached absent the [erroneous instruction]." Brooks v. United States, 367 A.2d 1297, 1309 (D.C.1976). "The infusion of 'harmlessness' into error must be the exception, and the doctrine must be sparingly employed." Clark v. United States, 593 A.2d 186, 192 (D.C.1991) (quoting Chapman v. United States, 547 F.2d 1240, 1250 (5th Cir.) (per Irving Goldberg, J.), cert. denied, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977)). Harmless error analysis should not be restricted to a superficial

inquiry as to whether the same verdict would have been possible if the error had not been made. See Brooks, supra, 367 A.2d at 1309 (emphasis added); see also Clark, supra, 593 A.2d at 192. Rather, we must determine whether the error was sufficiently insignificant to give us fair assurance that the judgment was not substantially swayed by it. Kotteakos, supra, 328 U.S. at 765, 66 S.Ct. at 1248.

In determining whether the error was harmless, we consider the closeness of the case, the centrality of the issue affected by the error, and any steps taken to mitigate the effects of the error. Clark, supra, 593 A.2d at 192–93; Gaither v. United States, 134 U.S.App.D.C. 154, 172, 413 F.2d 1061, 1079 (1969). The prosecutor unquestionably presented a substantial amount of evidence, although the strength of his case did depend on the credibility of Officers Wharton and Waters, both of whom were at least marginally impeached.[17] Since the aiding and abetting instruction permitted the jury to convict Brooks even if he was never in the restaurant, the error undercut the assumption on which his defense was predicated, and thus affected a very significant issue.[18] Finally, no remedial steps were taken, for there was no further closing argument at which Brooks could attempt to refute the aiding and abetting theory. We therefore conclude that the error was prejudicial, not harmless.[19]

---

16. The government contends in its brief that "[t]o show prejudice, appellant must show that had the trial court not acted as it did, there is a reasonable probability that the trial's outcome would have been different." (Emphasis added). No authority is cited for this proposition, and it appears to be irreconcilable with the "fair assurance" language in Kotteakos.

17. In Thomas v. United States, 557 A.2d 1296, 1303 (D.C.1989), we noted that since appellate courts cannot view the demeanor of the witnesses, "it is difficult to determine the strength of the case, because the result turns in large part on … credibility."

18. Although speculation as to what may have influenced a jury is always fraught with peril, the announcement of the verdict so soon after the aiding and abetting instruction was given, when lengthy earlier deliberations had failed to resolve the case, tends to suggest that the instruction may have affected the verdict. The question propounded to the judge by the jurors also suggests that they viewed the principles

later articulated to them in Instruction No. 4.02 to be of some significance.

19. Relying on Hackney, supra, 389 A.2d at 1343–44 and Head, supra, 451 A.2d at 626, the government contends that the trial judge's instruction does not require reversal because, when there is strong evidence that the defendant was on the scene, then (in the language of Hackney, repeated in Head), "the greater participation in the offense includes the lesser and the legal effect is the same." Although the meaning of the quoted language is not entirely clear, there was substantial evidence both in Hackney and in Head that several persons other than the defendant participated as principals in the crimes in question. The basis for an aiding and abetting instruction was thus substantially stronger in both cases than it was here.

We do not agree with the government's apparent theory that Hackney and Head in effect overruled the requirements for an aiding and abetting instruction set out in Payton. See discussion at pages 1099–1100, supra. That posi-

## IV

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

WAGNER, Associate Judge, dissenting:

I disagree with the majority's disposition of the case because, in my view, the trial court did not err in instructing the jury on aiding and abetting, and even assuming error, it was harmless. Appellant raises an additional significant issue, but one which cannot be resolved in his favor on the record before us.[1] Therefore, I would affirm appellant's convictions.

## I.

Appellant was indicted along with a co-defendant, Cynthia Murphy, for each of the offenses for which he was convicted; however, the proceeding below involved only appellant. The government introduced sufficient evidence to establish that the crimes were committed and that appellant was the person who committed them. That evidence is recounted in detail in the majority's opinion. It need not be repeated except as necessary to explain the reasons for my dissent. Cynthia Murphy was shown to be linked to the crimes through evidence showing that she was seen standing in the alley near the back entrance of the closed restaurant which was burglarized while the crimes were in progress and before appellant was chased out of the restaurant by the police dog. There was a lady's pocketbook a few feet from Ms. Murphy which contained a hat, make-up mirror and tools which would be useful in a burglary (two flashlights, a hammer, two types of screw drivers and vice grips). Aside from this evidence of the possible involvement of Ms. Murphy in the crimes charged, there was testimony that the bottles of liquor, the subject of the petit larceny count, contained latent fingerprints of someone other than appellant. While there was evidence that the locks were hanging from the rear door, which had been removed from its hinges, and that an office door and a safe inside showed signs of breaking, there was no direct evidence of who or how many persons participated in these phases of the crimes.

The government requested, but appellant, who represented himself, expressed a "problem" with the standard aiding and abetting instruction.[2] The trial court denied the request. In closing argument appellant argued, without evidentiary support, that he was never inside the restaurant and that there could have been a "missing link suspect" who escaped undetected through the alley. No doubt confused by appellant's argument and the possible involvement of others in the crimes, including Ms. Murphy, the jury sent a note seeking guidance, "particularly in reference to petit larceny."[3] The reason for the note is not difficult to discern. The presence of fingerprints of someone other than appellant on the property which was taken in the larceny, the evidence of Ms. Murphy's presence near the burglarized premises in constructive possession of a pocketbook of tools, and appellant's argument regarding the "missing link" suspect provide a reasonable explanation for the note. It was in response to this note and the fact

---

tion cannot be reconciled with this court's adherence to the doctrine of *M.A.P. v. Ryan,* 285 A.2d 310 (D.C.1971). Moreover, *Payton* was relied on as authority in *Head,* 451 A.2d at 626, and more recently in *Gayden,* 584 A.2d at 582, and we take this opportunity to reaffirm the legal principles articulated in that case. To be an aider or abettor, you must have a principal to aid or abet.

1. That issue involves the adequacy of the trial court's inquiry when confronted with appellant's request to represent himself because of his dissatisfaction with counsel. In view of the disposition of the case, further discussion of the issue would be advisory only. Therefore, I do not address it.

2. Criminal Jury Instructions for the District of Columbia, No. 4.02 (3d ed. 1978).

3. The note read:
 If a person knows of a crime and is present during the crime and agrees with the commission of the crime, is that person guilty of a crime? Please clarify the law on these questions, particularly in reference to petit larceny.

the accused had argued to the jury that someone else was involved in the burglary that the trial court reversed its earlier ruling and decided to provide the aiding and abetting instruction.

In my opinion the trial court did not abuse its discretion in giving the aiding and abetting instruction under the circumstances. *Tyler v. United States*, 495 A.2d 1180, 1183 (D.C.1985) (the instruction to be given in response to a jury note lies within the trial court's discretion). The inculpatory presence of Ms. Murphy near the burglary tools and the fingerprint testimony provided evidentiary support for the jury to infer that appellant was not the sole participant in the crimes charged.

My disagreement with the majority opinion is accounted for, in part, by its conclusion that where two people are shown to have participated in a crime, the guilt of the one shown to have had greater involvement cannot be considered under an aiding and abetting theory. I believe that the majority's position on this score is contrary to current law. In establishing criminal culpability based upon an aiding and abetting theory, it is not required that the role of the aider and abettor be determined to be subordinate to the role of others involved. *United States v. Austin*, 462 F.2d 724, 731–32 (10th Cir.), *cert. denied*, 409 U.S. 1048, 93 S.Ct. 518, 545, 547, 34 L.Ed.2d 501 (1972). What is essential is that there be proof that the crime was committed by someone and that a defendant have participated in the commission of the offense. *Gayden v. United States*, 584 A.2d 578, 583 (D.C.1990), *cert. denied*, — U.S. —, 112 S.Ct. 137, 116 L.Ed.2d 104 (1991); *Head v. United States*, 451 A.2d 615, 626 (D.C.1982); *Hackney v. United States*, 389 A.2d 1336, 1343 (D.C.1978), *cert. denied*, 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 95 (1979).

The majority suggests that none of these cases "stands for the proposition that the main wrongdoer can be an aider and abettor of a minor participant." However, this is not the critical issue in determining the propriety of the instruction. The cases do establish that such a distinction is not significant in deciding, as we do here, whether an aiding and abetting instruction was properly given. *Head, supra,* 451 A.2d at 626 (where evidence tended to prove appellant was the principal, aiding and abetting instruction not error); *Hackney, supra,* 389 A.2d at 1343–44 (although evidence showed appellant was actual killer, instruction on aiding and abetting not inconsistent or misleading); *Austin, supra,* 462 F.2d at 731 (not necessary to aiding and abetting theory to determine who was the central figure where each of four defendants played integral part). In many circumstances, it cannot be determined which of several participants masterminded the criminal venture nor who played the greater role. Nevertheless, an aiding and abetting theory is viable, and the instruction may be given.

Even when the evidence shows that a defendant is the principal in a crime in which others participated, an instruction on aiding and abetting is not inconsistent or misleading as "the greater participation in the offense includes the lesser and the legal effect is the same." *Hackeny, supra,* 389 A.2d at 1344. The effect of the instruction under such circumstances is to allow the jury to consider whether, as one of several persons clearly implicated, the defendant is responsible as the principal or as the one who assisted others in committing the offense. *Head, supra,* 451 A.2d at 626.

The distinction between the criminal responsibility for commission of an offense by a principal and by an accessory has been eliminated by statute which provides for treatment of the latter as an accessory or as principal. D.C.Code § 22–105 (1989).[4] This statute does not involve a separate offense, but an alternative charge which permits a defendant to be found guilty as a principal for aiding another in the commis-

---

4. D.C.Code § 22–105 reads:

In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be.

sion of an offense. Insofar as the majority premises its decision on the grounds of the relative level of participation by appellant and Murphy, it imposes a distinction which is not within the statute nor recognized in applicable case law.

To establish aiding and abetting under the statute the government must prove that "(a) a crime was committed by someone; (b) the accused assisted or participated in its commission; and (c) his participation was with guilty knowledge." *Jefferson v. United States*, 463 A.2d 681, 683 (D.C.1983). While I agree with the majority's observation that one cannot aid and abet himself, one need be shown only to have aided someone in committing the offense. *Id.* at 683; *United States v. Martin*, 747 F.2d 1404, 1407 (11th Cir.1985); *Morgan v. United States*, 159 F.2d 85, 87 (10th Cir.1947). The relative level of participation by each person involved is immaterial. *See Hackney, supra*, 389 A.2d at 1343–44; *see also United States v. Staten*, 189 U.S.App.D.C. 100, 109, 581 F.2d 878, 887 (1978). Also immaterial is the characterization of one participant as the dominant participant in the crime. It is not even required that all guilty parties be apprehended, charged or identified.[5] *Gayden, supra*, 584 A.2d at 582; *Mason v. United States*, 256 A.2d 565, 567 (D.C.1969); *Feldstein v. United States*, 429 F.2d 1092, 1095 (9th Cir.), *cert. denied*, 400 U.S. 920, 91 S.Ct. 174, 27 L.Ed.2d 159 (1970).

Unless it is unreasonable to infer that Murphy was involved in the crime in any way, a conclusion which the majority does not reach, there is sufficient evidence that the crimes at the Lincoln Restaurant were committed and that both Murphy and appellant participated in them. The implication of Murphy is supported by reasonable inferences which can be made from the evidence. Although the proof as to appellant's role in the enterprise appears to be greater than that shown for Ms. Murphy, the law does not preclude his conviction on an aiding and abetting theory where someone else is shown to have been involved, where all elements of the crime have been established and where all elements of aiding and abetting have been proved.[6]

The fact that the instruction was given after closing arguments and during deliberations was not prejudicial to appellant and does not serve as a basis for reversal of the conviction on the facts presented. Instructing a jury on aiding and abetting will constitute reversible error if the trial court abuses it discretion, *Tyler, supra*, 495 A.2d at 1183, and the error is prejudicial to appellant. *See Ballard v. United States*, 430 A.2d 483, 487–88 (D.C.1981). I find neither an abuse of discretion nor prejudice here. In *Tyler*, as in this case, the court instructed the jury for the first time on aiding and abetting a burglary in response to a jury note. *Tyler, supra*, 495 A.2d at 1182–83. The court found no prejudice because the defense was that appellant was not among

5. The majority opinion cites *Payton v. United States*, 305 A.2d 512 (D.C.1973), for the proposition that "there must be evidence that someone other than defendant was the principal whom defendant aided and abetted" before a defendant who is charged as principal may be convicted as an aider and abettor. *Id.* at 513. A review of the cases cited by the *Payton* court in support of this statement leaves no doubt that it was not concerned with the necessity of proof of a position of dominance by the principal. In *Morgan, supra*, which *Payton* cites, the appellant was found not guilty as a principal, but guilty of the charged offense of aiding and assisting in the illegal transportation of intoxicating liquor. *Morgan*, 159 F.2d at 85. The conviction was reversed because the government failed to prove that anyone else was involved. *Id.* at 87. In *United States v. Horton*, 180 F.2d 427 (7th Cir. 1950), also cited in *Payton*, the failure of proof of aiding and abetting turned on the lack of

proof that the alleged co-participants had violated any laws. The court in *Payton* relied on these cases in reaching its result, but seemed to suggest, contrary to established precedents, that an aiding and abetting instruction could not be given unless the other perpetrators were identified. *Payton*, 305 A.2d at 513. On the other hand, the decision can be reconciled with applicable law, if the decision is viewed as based upon the court's conclusion that it had not been proven that the crime charged had been committed by someone in addition to appellant.

6. The aiding and abetting instruction allows a defendant to be found guilty of the charged offense without "finding that he personally committed each of the acts constituting the offense"; however, the jury must find "beyond a reasonable doubt that the crime was committed by someone." Criminal Jury Instructions for the District of Columbia, No. 4.02 (3d ed. 1978).

the men involved in the burglary, a defense which would have exonerated him as principal or as an aider and abettor. *Id.* Thus, the court concluded that appellant's argument would not have been different if the instruction had been given before argument and deliberations. *Id.* Analogous circumstances are presented here.

The majority seeks to distinguish *Tyler* on the grounds that appellant might have been able to invite the jury's attention to the lack of evidence connecting him to Ms. Murphy and to the absence of evidence that appellant assisted an unknown person inside the restaurant. First, the opportunity to argue the absence of evidence linking the perpetrators of the crime was a circumstance for consideration in *Tyler* as in this case. Yet, the possibility did not control the outcome. Second, evidence concerning Ms. Murphy's presence and discovery of the tools near her could have been admitted only because of its relevance to the burglary and related offenses. The evidence would have supported an argument that the government failed to establish any connection between appellant and the tools or appellant and Ms. Murphy. Appellant chose not to make this argument which was consistent with his defense and which could have been made without an aiding and abetting instruction. Since the delay in giving the aiding and abetting instruction did not foreclose the argument, I find no prejudice to appellant as a result of its timing. Third, only if the jury believed that appellant was the man inside the restaurant and/or the man who was captured running out of the restaurant could the jury find appellant guilty as an aider and abettor or as a principal. Appellant did argue that he was never inside the restaurant and that he did not participate in the crime. In effect, he made an argument distancing himself from the perpetrator of the crimes. For these reasons, I see no significant difference between what appellant argued and what he might have ar-

gued if the instruction had been given earlier.

In this case appellant successfully challenged the government's initial request for an aiding and abetting instruction,[7] which was supportable given the evidence.[8] Appellant was allowed to argue, without evidentiary support, that he was not present and that some other person must have committed the offense and escaped up the alley. Ironically, the majority finds prejudicial the instruction on aiding and abetting, in part, because of an absence of a showing that someone other than appellant was the primary participant in the criminal events. The government argues, and I agree, that appellant's closing argument was that the burglary was committed not by him, but by someone else. Had the jury accepted his argument, appellant would have been found not guilty as a principal or as an aider and abettor. *See Tyler, supra,* 495 A.2d at 1183. Therefore, I find no prejudice.

Moreover, the evidence of appellant's guilt was substantial. Assuming error in the instruction, the judgment could not have been swayed substantially by it under the circumstances. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). For the foregoing reasons, I am of the view that no error has been shown warranting reversal and a new trial in this case.

---

7. Although appellant did not state that he objected to the instruction, he expressed that he had a problem with it. The trial court considered the matter and denied the government's request.

8. If the evidence of Ms. Murphy's constructive possession of burglary tools in the alley on a winter evening, near the door of a restaurant in which a burglary was in progress was not relevant to show her participation in the crimes, then this evidence should have been excluded as irrelevant. However, the evidence was offered and admitted, no doubt, because of its obvious relevance to the offenses.