MEMORANDUM DECISION
Defendant-appellant, Tyrone Mills, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of possession of cocaine in violation of R.C. 2925.11, with a firearm specification.
By indictment filed April 18, 1997, defendant was charged with two counts of trafficking in cocaine and one count of possession of cocaine, as well as two firearm specifications. The trial court entered a nolle prosequi regarding the two counts of trafficking in cocaine, and the case proceeded to a jury trial on the remaining possession count and firearm specifications. The jury returned a verdict finding defendant guilty of possession of crack cocaine in an amount exceeding ten grams but not exceeding twenty-five grams, guilty of one of the firearm specifications, and not guilty of the other firearm specification. Defendant appeals, assigning the following three errors:
 ASSIGNMENT OF ERROR NO. 1: THE COURT OF COMMON PLEAS ERRED AND DENIED DEFENDANT-APPELLANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER U.S. CONST. AMEND. V AND XIV AND OHIO CONST. ART. 1, § 10 WHEN IT INCLUDED AN AIDING AND ABETTING INSTRUCTION IN THE GENERAL CHARGE TO THE JURY AND WHEN IT GAVE THE JURY A SUPPLEMENTARY INSTRUCTION ON JOINT POSSESSION THAT WAS NOT RESPONSIVE TO THE JURY'S QUESTION DURING DELIBERATIONS. THE AIDING AND ABETTING AND JOINT POSSESSION INSTRUCTIONS WERE NOT SUPPORTED OR JUSTIFIED BY THE EVIDENCE, SERVED TO CONFUSE THE JURY, AND RESULTED IN PREJUDICE TO THE DEFENSE.
 ASSIGNMENT OF ERROR NO. 2: THE COURT OF COMMON PLEAS ERRED AND DENIED DEFENDANT-APPELLANT HIS CONSTITUTIONAL RIGHT TO DUE PROCESS AND A FAIR TRIAL UNDER U.S. CONST. AMEND. V AND XIV AND OHIO CONST. ART. 1, § 10 WHEN IT PERMITTED THE PROSECUTING ATTORNEY TO IMPROPERLY VOUCH FOR THE CREDIBILITY OF HER KEY COOPERATING WITNESS BY SUGGESTING TO THE JURY DURING CLOSING ARGUMENT THAT THE IMMUNITY AGREEMENT BETWEEN THE STATE AND THE WITNESS ENSURED THAT THE WITNESS WAS TRUTHFUL IN HER TESTIMONY, FAILED TO SUSTAIN A DEFENSE OBJECTION TO SUCH IMPROPER VOUCHING, AND FAILED TO GIVE THE JURY A CURATIVE INSTRUCTION.
 ASSIGNMENT OF ERROR NO. 3: THE COURT OF COMMON PLEAS ERRED AND VIOLATED DEFENDANT-APPELLANT'S RIGHT TO DUE PROCESS UNDER U.S. CONST. AMEND. V AND XIV AND OHIO CONST. ART. I, § 10 WHEN IT DENIED HIS MOTION FOR JUDGMENT OF ACQUITTAL ON THE FIREARM SPECIFICATION TO THE POSSESSION OF COCAINE BASE COUNT OF THE INDICTMENT. THE STATE'S EVIDENCE FAILED TO ESTABLISH SOME NEXUS BETWEEN THE TWO HANDGUNS FOUND BY POLICE IN THE UPSTAIRS BEDROOM OF THE SEARCHED RESIDENCE AND THE CRACK COCAINE FOUND IN THE DOWNSTAIRS DINING ROOM FROM WHICH A REASONABLE TRIER OF FACT COULD FIND THAT HE HAD THE HANDGUNS UNDER HIS CONTROL WHILE COMMITTING THE UNDERLYING OFFENSE OF POSSESSION OF CRACK COCAINE.
According to the evidence at trial, on the night of April 9, 1997, the INTAC tactical entry unit of the Columbus Narcotics Detective Bureau executed a search warrant at 1036 Wilson Avenue, where defendant and his girlfriend, Artisseia Williams, resided as tenants. Police officials breached the front door of the premises, arrested defendant and Williams, and secured 14.4 grams of crack cocaine, over $600 in cash, a .22 caliber revolver, a .380 caliber semi-automatic pistol, and various items containing cocaine residue. Police officials discovered the crack cocaine on the downstairs dining room table, and found the weapons in an upstairs bedroom. Although the search team arrested Williams in the dining room area, Detective Gary Rundio testified that he spotted defendant exiting the upstairs bathroom and arrested defendant in the upstairs hallway, at the top of the stairs. Defendant was not carrying any money, weapons, or contraband when he was arrested.
Various members of the search team testified for the state regarding the general layout of the house and the location of the drugs, money, and firearms in relation to defendant and Williams. Testifying for the state pursuant to an agreement with the state not to prosecute her in return for her truthful testimony, Williams stated that the drugs and firearms belonged solely to defendant.
Defendant's first assignment of error contends that the trial court erred in charging the jury on aiding and abetting over defendant's objection.
In a criminal trial, the charge to the jury is restricted to that which the indictment and the evidence support.State v. Denny (Oct. 12, 1989), Franklin App. No. 89AP-329, unreported (1989 Opinions 3905) (citations omitted). "When the evidence adduced at trial could reasonably be found to have proven the defendant guilty as an aider and abettor, a jury instruction by the trial court on that subject is proper." State v. Perryman
(1976), 49 Ohio St.2d 14, paragraph five of the syllabus, vacated in part on other grounds, Perryman v. Ohio (1978), 438 U.S. 911;State v. Williams (Nov. 18, 1993), Franklin App. No. 93AP-494, unreported (1993 Opinions 4951); Denny, supra. However, where trial evidence would have supported only a finding that the defendant was the principal offender, the trial court errs in charging the jury on complicity. See State v. Woods (1988),48 Ohio App.3d 1, 7, appeal not allowed (1988), 38 Ohio St.3d 715.
Generally, aiding and abetting is demonstrated by proof that the defendant advised, hired, incited, commanded, or counseled the principal to do the act. See Williams, supra,
(quoting State v. Starr (1970), 24 Ohio App.2d 56, 58); see, also,State v. Sims (1983), 10 Ohio App.3d 56, 58-59 (defining aider and abettor as "[o]ne who assists another in the accomplishment of a common design or purpose [with] aware[ness] of, and consent to, such design or purpose"). In response to defendant's assigned error, the state asserts that the evidence supports a reasonable inference that Williams acted as the principal possessor of the drugs and firearms, and thus provided a proper basis for the instruction on aiding and abetting. Defendant contends that Williams' denying ownership of the drugs and firearms negated any reasonable inference that Williams was the principal offender, rendering the instruction on aiding and abetting improper.
The offense of aiding and abetting another in the commission of a crime may be demonstrated by direct or circumstantial evidence. State v. Sims (Feb. 20, 1997), Franklin App. No. 96APA05-676, unreported (1997 Opinions 417), appeal not allowed (1997), 79 Ohio St.3d 1417. Here, the circumstantial evidence supports a reasonable conclusion that Williams was a principal offender, notwithstanding Williams' testimony to the contrary.
Defendant was convicted of violating R.C. 2925.11, which provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance." R.C. 2925.11(A). R.C. 2925.01(K) indicates that "`possession' means having control over a thing or substance, but may not be inferred solely from the mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found."
Possession of a controlled substance may be actual or constructive. State v. Chandler (Aug. 9, 1994), Franklin App. No. 94APA02-172, unreported (1994 Opinions 3452); State v. Dawson
(Aug. 13, 1998), Franklin App. No. 97APA10-1300, unreported (1998 Opinions 2818), appeal not allowed (1998), 84 Ohio St.3d 1446. Constructive possession is demonstrated by proof that the defendant, while conscious of the presence of the object, was capable of exercising dominion or control over the object, even though the object was not within his or her immediate physical possession. Chandler, supra (citing State v. Wolery (1976),46 Ohio St.2d 316); see, also, State v. Kobi (1997), 122 Ohio App.3d 160;State v. Thomas (1995), 107 Ohio App.3d 239, 244, appeal not allowed (1995), 75 Ohio St.3d 1448. Readily usable drugs found in very close proximity to a defendant may constitute circumstantial evidence of constructive possession. In re Farr (Nov. 9, 1993), Franklin App. No. 93AP-201, unreported (1993 Opinions 4749); Kobi,supra; cf. State v. Short (July 18, 1991), Cuyahoga App. No. 58676, unreported, appeal not allowed (1991), 63 Ohio St.3d 1404
(noting that while mere ownership or occupancy of premises where drugs are found may be insufficient to prove "possession," occupancy plus presence may be sufficient).
Here, police officials discovered the drugs on the dining room table and under the leg of the television in the middle of the dining room. When the search team entered the house, Williams was sitting in the dining room, facing the dining room table and the television. Immediately prior to executing the search warrant, several officers observed defendant looking out from the front door, and then fleeing to the upstairs bathroom when police officers approached the premises.
Given that evidence, the jury could reasonably disbelieve Williams' assertion that the drugs were solely defendant's property and conclude instead that Williams constructively possessed the drugs. Cf. State v. Johnson (July 11, 1990), Summit App. No. 2913, unreported (finding sufficient evidence of constructive possession where cocaine was found in plain view on living room coffee table); State v. Grundy (Dec. 9, 1998), Summit App. No. 19016, unreported (finding sufficient evidence of constructive possession where cocaine was found in dresser drawer in same room as defendant).
While the jury could not improperly draw an inference that Williams was the principal offender solely from Williams' mere presence in the dwelling where the drugs were found, the jury could reasonably view Williams' involvement as more than mere "access to the thing or substance through * * * occupation of the premises," because the crack cocaine was found in Williams' immediate presence, openly displayed, and in a readily-usable state. Moreover, the jury could reasonably conclude from defendant's position when officers arrived that defendant acted as a "look-out," thereby both assisting Williams in a common purpose relative to the cocaine and serving as an aider and abettor in the possession offense. Accordingly, the instruction on aiding and abetting was proper on the offense of possession of crack cocaine.
Defendant nonetheless argues that Russell v.United States (C.A.D.C. 1997), 701 A.2d 1093, and Brooks v. United States
(C.A.D.C. 1991), 599 A.2d 1094, support the opposite conclusion. In both of those cases, the District of Columbia Court of Appeals held that because "[o]ne cannot aid or abet himself"; that to warrant a jury instruction on aiding and abetting, some evidence on the record must demonstrate a principal existed whom the defendant aided and abetted. Brooks, supra, at 1099; Russell,supra, at 1100. Unlike here, in both of those cases, the court found no evidence whatsoever that defendant aided and abetted anyone else in committing the crimes of which he was convicted.Russell, supra, at 1099-1100; Brooks, supra, at 1099. Russell andBrooks thus are not persuasive, given the evidence that defendant aided and abetted Williams in the possession offense. Accord Bayerv. United States (C.A.D.C. 1994), 651 A.2d 308, 310; Brown v.United States (C.A.D.C. 1996), 683 A.2d 118, 128, n. 12. Similarly,State v. Woods, supra, on which defendant also relies, does not apply. In Woods, the trial evidence supported defendant's conviction only as the principal offender or as an accessory after the fact, while here the evidence supports defendant's role as an aider and abettor.
For the foregoing reasons, defendant's first assignment of error is overruled.
Defendant's second assignment of error concerns the prosecution's statements during closing argument. During direct examination, Williams testified that she agreed to testify truthfully against defendant in return for the prosecution's promise not to indict her for her participation in the events that lead to defendant's indictment. On cross-examination, Williams testified that she understood the agreement to require her to testify against defendant. In an effort at rehabilitation, the prosecution asked Williams if her agreement with the state was " to testify against [defendant] to avoid indictment, or was it that you have to testify truthfully to avoid indictment?" (Tr. 197.) Following objection and a side bar conference in which the prosecution pointed out that defendant used the term "against," the court overruled the objection. Williams then responded: "I was told regardless of the outcome I would have to be honest and to tell the truth, and if I didn't remember, don't lie, just say I didn't remember." (Tr. 198.)
During closing arguments, the prosecutor argued the following to the jury:
 Let's talk about the agreement that [Williams] entered into because that is going to be something you will want to consider. She does have an interest in testifying. She has to testify truthfully under the agreement, and you heard her. She did not want to testify. She didn't want to be here. She had to. In exchange for that she would not be indicted.
* * *
 * * * You know what the terms of the agreement are and you heard her testify. This is her boyfriend. She didn't say that he used to be her boyfriend. She said he is her boyfriend. That shows a bias the other way. The deal is the truth, whatever she testified to truthfully.
 [Defense Counsel]: Objection, Your Honor, same vouching issue.
The Court: Same ruling, overruled.
* * *
 [Prosecutor]: Artisseia could have come in here and said things that weren't true. She could have said that those drugs were hers, and she would have met her agreement. If that were true, she would not have been indicted. It was truthful testimony that was required, and if that were the truth, that would have fulfilled the agreement. (Tr. 238-239, 263.)
Defendant contends that the prosecution improperly vouched for Williams' credibility by referring to the terms of Williams' agreement with the state. Generally, the prosecution is granted some latitude during closing argument. State v. Crago
(1994), 93 Ohio App.3d 621, 644, appeal not allowed (1994),70 Ohio St.3d 1413, and reconsideration denied (1994), 70 Ohio St.3d 1448, certiorari denied ___ U.S. ___, 115 S.Ct. 1149. "In determining whether reversal is required due to misstatements by the prosecution, the statements must have been improper and they must have prejudiced substantial rights of the accused. Id.
(citing State v. Smith (1984), 14 Ohio St.3d 13). "It is improper for an attorney to express his or her personal belief or opinion as to the credibility of a witness or as to the guilt of the accused." State v. Williams (1997), 79 Ohio St.3d 1, 12, certiorari denied ___ U.S. ___, 118 S.Ct. 703 (citations omitted). Moreover, the prosecution should not allude to matters that are not supported by the admissible evidence. State v. Braxton (1995),102 Ohio App.3d 28, 42, appeal not allowed (1995), 73 Ohio St.3d 1425
(citing Smith, supra, at 14).
Because defense counsel used Williams' agreement to attack Williams' credibility, the prosecution's reference to the agreement on re-direct examination was proper. Nor did the prosecution's statements during closing argument constitute vouching, as the prosecutor neither expressed a personal opinion as to Williams' credibility, nor referred to matters not in evidence. Rather, the prosecutor explained the terms of the agreement, which were already properly before the jury. Cf. Statev. McDade (Nov. 20, 1991), Miami App. No. 90 CA 46, unreported (finding prosecution's interrogation of state's witnesses regarding the terms of their agreements with the state did not constitute vouching because prosecutor did not offer a personal belief as to the witnesses' credibility).
United States v. Carroll (C.A.6, 1994), 26 F.3d 1380, which defendant cites as support, is not instructive here. InCarroll, the Sixth Circuit Court of Appeals found reversible prosecutorial misconduct where the prosecution repeatedly implied to the jury that government witnesses' plea agreements ensured the witnesses' credibility, and that the government and the court were satisfied that the government witnesses had testified truthfully.Carroll, supra, at 1389. Unlike here, the prosecutorial statements in Carroll went far beyond mere references to the terms of the plea agreement: the prosecution in Carroll repeatedly and blatantly stated to the jury that the government's witnesses were worthy of belief because their plea agreements required truthful testimony, see id. at 1382, nn. 1-3 (quoting trial transcript).
Notably, federal courts have generally found no error where the prosecution merely informs the jury of the contents of a plea agreement without implying truthfulness from extra-record facts, the prosecutor's personal opinion, or the government's satisfaction with the witness' truthfulness. See, e.g., UnitedStates. v. Tulk (C.A.8, 1999), 171 F.3d 596, 600; United States v.Knowles (C.A.11, 1995), 66 F.3d 1146, 1161, certiorari denied inWright v. United States, ___ U.S. ___, 116 S.Ct. 1449; UnitedStates v. Magee (C.A.8, 1994), 19 F.3d 417, 421, certiorari denied (Oct. 11, 1994), 513 U.S. 939; United States v. Dockray (C.A.1, 1991), 943 F.2d 152, 157. The facts here are more similar to the federal cases upholding prosecutorial references to plea agreements than to the extreme example in Carroll.
Accordingly, the trial court correctly overruled defendant's objection during closing arguments. Defendant's second assignment of error is overruled.
Defendant's third assignment of error contends the trial court improperly overruled his Crim.R. 29 motion for acquittal regarding the sufficiency of the evidence to support the firearm specification. A motion for acquittal should be denied if "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Williams
(1996), 74 Ohio St.3d 569, 576, certiorari denied ___ U.S. ___,117 S.Ct. 109 (quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus).
R.C. 2929.14(D)(1)(a)(i) and R.C. 2941.141 mandate a one-year mandatory prison term if the offender is proven to have "had a firearm on or about the offender's person or under the offender's control while committing the offense." The trier of fact may consider all of the surrounding facts and circumstances in determining whether a defendant had a firearm in his possession or under his control at the time of an offense. See State v.Thompkins (1997), 78 Ohio St.3d 380, paragraph one of the syllabus, motion for rehearing denied (1997), 79 Ohio St.3d 1451. Here, the state failed to establish that defendant had a firearm on or about his person or subject to his control at any time during the commission of the underlying offense.
The jury found defendant guilty of the specification arising from the handgun found on the upstairs bedroom dresser, but not guilty of the specification arising from the handgun found in a cigar box inside the dresser. While Williams testified that the handgun found on top of the dresser belonged to defendant, Williams did not indicate that defendant carried the weapon at any time pertinent to the case. Therefore, defendant was guilty of the firearm specification only if the handgun found on the dresser was "under [defendant's] control."
Both parties argue that State v. Brown (1995), 107 Ohio App.3d 194, resolves that issue. In Brown, police officers executing a search warrant found the defendant lying on a couch in the living room approximately ten to twelve feet from the defendant's bedroom. Officers found drugs in the defendant's bedroom and a firearm between the mattress and the box spring of the defendant's bed. One officer estimated that the defendant could have traveled the distance from the couch to the bed in less than a second. The court concluded that the foregoing evidence, if believed, demonstrated that the defendant had control of the handgun at some point during his possession of the drugs. Brown,supra, at 201.
In reaching its decision, Brown considered the underlying purpose of the gun specification: to deter possession or control of firearms during the commission of crimes due to the safety hazards such possession or control poses to the public and arresting officers. See State v. Powell (1991), 59 Ohio St.3d 62,63. Given that purpose, Brown concluded the defendant had sufficient control over the firearm to pose a threat to arresting officers.
Unlike Brown, the firearm here was not found in the same room with the drugs, and the distance between defendant and the firearm was far greater than ten to twelve feet. Nor did the state introduce any evidence suggesting that defendant entered the bedroom where officials actually discovered the firearm. Instead, defendant ran upstairs in an unsuccessful attempt to flee the building from the bathroom window and was ordered by the containment team located in the back yard to proceed back into the dwelling. Defendant complied, and search team members arrested him as he re-entered the upstairs hallway at the top of the stairs.
Even when that evidence is construed in a light most favorable to the prosecution, it fails to demonstrate that defendant had control of the firearm in the bedroom during the commission of the underlying possession offense. Accordingly, defendant's third assignment of error is sustained.
Having overruled defendant's first and second assignments of error, but having sustained defendant's third assignment of error, we affirm the judgment of the trial court as to defendant's conviction for possession of cocaine and reverse the judgment of the trial court as to the firearm specification. Accordingly, we remand this case to the trial court to modify the sentence in accordance with this opinion.
Judgment affirmed in part and reversed in part; case remandedwith instructions.
BRYANT, BOWMAN and KENNEDY, JJ., concur.